IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LINDA HOUSEHOLDER,          )
                            )
          Plaintiff,        )
                            )
     v.                     )  Civil Action No. 07-0372
                            )
ARMSTRONG COUNTY MEMORIAL HOSPITAL, )
                            )
          Defendant.        )

MEMORANDUM and ORDER

Gary L. Lancaster,
District Judge.                         August 5, 2008

This is an action in employment discrimination. Plaintiff, Linda Householder, alleges that defendant, Armstrong County Memorial Hospital ("ACMH"), discriminated and retaliated against her on the basis of her age in violation the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq., ("ADEA") and the Pennsylvania Human Relations Act, 43 P.S. § 951 ("PHRA"). Plaintiff seeks damages, costs, and attorneys' fees.

Defendant has filed a motion for summary judgment [Doc. No. 23] arguing that plaintiff has failed to set forth a _prima facie_ case. We agree, and for the reasons that follow, will grant the motion for summary judgment.

I. FACTUAL BACKGROUND

Unless otherwise noted, the following facts are not in dispute. Other material facts may be discussed in context throughout this opinion.

Linda Householder, age 52, has been employed at Armstrong County Memorial Hospital ("ACMH") since 1976. Although she has performed various duties, such as billing and coding, she has held the position of ultrasound technologist since 1985. In this position, Householder scans images of patients and takes clinical directives from various radiologists.[1] ACMH relies on radiologists' clinical expertise in evaluating the quality of a technologists' images. Householder's supervisors at ACMH include the lead technologist, Sherri Hagofsky, and department supervisors, Marcy Green (supervisor of imaging services) and Kim Crawford (supervisor of outpatient imaging). Green and Crawford report to Mona Rupert, the Vice President of Clinical Services at ACMH.

Beginning in 2004, several radiologists complained to ACMH about Householder's performance. Pursuant to ACMH policy, if a radiologist has a complaint about an exam performed by a technologist, the radiologist is to complete a Quality Assurance ("QA") form setting forth his opinion. Householder received

---

[1] The radiologists who perform work at ACMH are not employees of ACMH but are employed by Lucien Diagnostic Imaging.

several QA forms in 2005 and 2006 from various radiologists. Householder contends that some of the radiologists' complaints were not accompanied by a QA form. She believes that she received the first four QA forms because of her age.

In the summer of 2006, two radiologists complained to Rupert, the Vice President of Clinical Services at ACMH, regarding Householder's performance. These complaints related to Householder's knowledge of anatomy, sub-optimal imaging techniques, attitude, lack of motivation, and lack of trust in her work. However, Householder denies the validity of these complaints and contends that no QA forms reflect these specific complaints made to Rupert.

Based on the complaints, ACMH placed Householder on a Corrective Action Plan ("CAP"). In August of 2006, Rupert, Green, Crawford, and Anne Remaley, the Vice President of Human Resources at ACMH, met with Householder to discuss the CAP. Householder admits that she was presented with a document setting forth the parameters of the CAP and that the reason given for the CAP was the radiologist complaints. Householder successfully completed the CAP, but contends that she should have received a higher score. After completing the CAP, she began receiving additional QA forms from radiologists regarding her performance. Householder never received a demotion or pay decrease because of the CAP or QA forms.

Householder received a Performance Evaluation Addendum and Employee Performance Appraisal in February of 2007. She contends that this was the first poor performance evaluation she had received and that it was retaliatory because of her age. However, she received the same pay increase as all of the other technologists in 2007 and 2008.

In August of 2007, ACMH suspended Householder for five days without pay because she accessed the medical files of two individuals. Householder disputes her suspension because she contends that she had the patients' permission and the information she accessed, such as one patient's room number, was readily available to the public. Regardless of patient consent, ACMH policy prohibits employees from accessing patient files for which they have no authorized access. ACMH had suspended five other employees who also accessed patient files in violation of ACMH policy.

II. Standard of Review

Fed. R. Civ. P. 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

4

material fact and that the moving party is entitled to a judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986) (internal quotation marks omitted). The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party does not bear the burden of persuasion at trial, as here, its burden "may be discharged by 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." Id. at 325. Once the moving party has filed a properly supported motion, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

A dispute over those facts that might affect the outcome of the suit under the governing substantive law, i.e. the material facts, is a genuine issue that will preclude the entry of summary judgment. Anderson, 477 U.S. at 248. In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but

only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. Id. at 248-49. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted). In sum, the inquiry under a Rule 56 motion is whether the evidence is so one-sided that the movant must prevail as a matter of law because no reasonable jury could return a verdict in the non-movant's favor. Anderson, 477 U.S. at 250-52.

It is on this standard that the court has reviewed defendant's motion and plaintiff's response thereto. Based on the pleadings and evidence of record, and the briefs filed in support and opposition thereto, the court concludes, as a matter of law, that there is no genuine issue of material fact and plaintiff has failed to establish a prima facie case of age discrimination or retaliation. Accordingly, the court will grant defendant's motion for summary judgment.

III. DISCUSSION

Plaintiff claims that ACMH subjected her to age discrimination in violation of the ADEA and PHRA when it placed her on a Corrective Action Plan. According to plaintiff, ACMH has also

6

retaliated against her after she filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

Defendant argues that plaintiff has failed to set forth a prima facie case of age discrimination because a corrective action plan is not an "adverse employment action." Specifically, defendant argues that plaintiff has no evidence to demonstrate that she suffered a significant change in employment status. Defendant further argues that plaintiff cannot set forth a prima facie case of retaliation. As set forth below, the court agrees.

A. Discrimination Claims

The ADEA[2] prohibits employers from discriminating against individuals in hiring, discharge, compensation, terms, conditions, or privileges of employment on the basis of their age. See 29 U.S.C. § 623(a)(1). Where, as here, there is no direct evidence of discrimination, age discrimination claims are analyzed under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Fasold v. Justice, 409 F.3d 178, 184 (3d Cir. 2005). To survive a motion for summary judgment in an

---

[2] The same legal standard applies to both the ADEA and the PHRA. Kautz v. Met-Pro Corp., 412 F.3d 463, 466 (3d Cir. 2005). Thus, the court's conclusions will apply equally to plaintiff's claims under both the ADEA and the PHRA.

7

ADEA case, a plaintiff must first establish a prima facie case[3] of age discrimination. McDonnell Douglas, 411 U.S. at 801. To establish a prima facie case, a plaintiff must demonstrate that: (1) she is a member of the protected class, i.e., over the age of 40; (2) she was qualified for the position; (3) she was subject to an adverse employment action despite being qualified; and (4) under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to the plaintiff's to fill the position. See Sarullo v. United States Postal Service, 352 F.3d 789, 797 (3d Cir. 2003). A plaintiff's subjective belief that her protected status played a role in an employment decision is not, alone, sufficient to establish an inference of discrimination. Jones v. United Parcel Service, 214 F.3d 402, 407 (3d Cir. 2000).

As an essential element of a prima facie case, an "adverse employment action" is an action that is "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." Storey v. Burns Intern. Security Services, 390 F.3d 760, 764 (3d Cir. 2004). Such actions

---

[3] Only where plaintiff establishes a prima facie case, does the burden shift to defendant to articulate a legitimate non-discriminatory reason for the adverse employment decision. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-55 (1981); see also Goosby v. Johnson & Johnson Medical, Inc., 228 F.3d 313 (3d Cir. 2000).

8

may include "hiring, firing, failing to promote, reassignment, or a decision causing a significant change in benefits." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 749 (1998).

Here, we agree with defendant that plaintiff has not shown that she suffered an adverse employment action. Plaintiff argues that the CAP constitutes an adverse employment action because it was premised "on obviously baseless complaints" and it placed her employment "in the hands of those who made said complaints." Although she was placed on a CAP in August of 2006 due to the radiologists' complaints, plaintiff concedes that she successfully completed the CAP and has remained employed at ACMH. Plaintiff has not alleged that the CAP has had any adverse impact on the conditions of her employment. She has not produced any evidence to show that she was fired, demoted, or denied any pay increase, or other benefit, because of the CAP.

Plaintiff's disagreement with the validity of the underlying complaints from the radiologists which resulted in ACMH placing her on the CAP does not establish that the CAP altered her compensation or the terms, conditions, or privileges of her employment. Although they may be unpleasant, situations in the workplace like the one alleged by plaintiff, without some evidence of tangible injury or harm, do no constitute adverse employment actions. See Storey, 390 F.3d at 764; see also Davis v. Town of

9

Lake Park, Fla., 245 F.3d 1232, 1241 (11th Cir. 2001) (criticisms of an employee's job performance, either written or oral, that do not lead to tangible job consequences rarely form the basis of discrimination suit) (collecting authorities).

Because plaintiff has failed to demonstrate that she has suffered an adverse employment action, she cannot set forth a prima facie case of discrimination on the basis of her age. Accordingly, we need not address any additional arguments regarding disparate treatment or pretext.

B. Retaliation Claims

Householder alleges that her retaliation claim is established by three possible adverse employment actions taken against her after she filed her charge of discrimination with the EEOC: 1) an increased number of QA forms; 2) a poor performance evaluation; and 3) a five day suspension without pay and "without cause."

Similar to Title VII, the ADEA prohibits retaliation. Specifically, the ADEA provides, in relevant part: "It shall be unlawful for an employer to discriminate against any of his employees ... because such individual, member or applicant for membership has opposed any practice made unlawful by this section... ." 29 U.S.C. § 623(d). Retaliation claims relying on indirect evidence are also analyzed under the McDonnell Douglas

analysis. Woodson v. Scott Paper Co., 109 F.3d 913, 919 (3d Cir. 1997). To establish a prima facie case of retaliation, plaintiff must demonstrate that she: (1) engaged in protected activity; (2) was subsequently or contemporaneously subject to an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action. Id. at 920.

It is undisputed that plaintiff engaged in protected activity. With respect to the second prong, a plaintiff is not required to show that the adverse action by the employer was so extreme as to affect the terms and conditions of employment; however, a plaintiff must still demonstrate that the alleged retaliatory actions were "materially adverse." See Moore v. City of Philadelphia, 461 F.3d 331, 341 (3d Cir. 2006). For purposes of evaluating plaintiff's retaliation claim, we will assume the alleged acts of retaliation were "materially adverse."

In assessing the third prong to determine whether there is a causal connection between the protected activity and the adverse employment action, courts consider a number of factors, including the temporal proximity between the protected conduct and the employment action, ongoing antagonism, inconsistent statements by the employer regarding its employment decision, and any other evidence from the record as a whole that is sufficient to establish a causal link. See Farrell v. Planters Lifesavers Co., 206 F.3d

11

271, 280 (3d Cir. 2000). Here, Householder has failed to adduce sufficient evidence to demonstrate a causal link between filing a charge of discrimination with the EEOC and any adverse employment action ACMH may have taken against her such that a reasonable juror could rule in plaintiff's favor on this claim.

First, Householder contends that she received six QA forms after filing her EEOC charge, compared to the four in the two-year period preceding the charge. However, plaintiff has presented no evidence that the radiologists who completed the QA forms were even aware of her EEOC charge. We do not consider the number of QA forms, standing alone, from individuals who were unaware of the EEOC charge, to be probative of retaliation.

Householder also contends, however, that her ACMH supervisor, who was aware of the EEOC charge, had some "veto" power over the QA forms. She alleges that when a QA form raises a complaint which is not valid, the supervisor must return the QA form to the radiologist rather than passing it on to the employee and placing it in her personnel file. Householder contends that in retaliation for filing the EEOC charge, her supervisor did not review the post-EEOC charge QA forms which were "invalid" and allowed them to be placed in her personnel file. This argument also fails because plaintiff has failed to present any evidence that her post-EEOC charge QA forms were materially different from

12

those she had received before she filed the EEOC charge.

Second, Householder contends that she received a poor performance evaluation in February of 2007, nearly six months after she filed the EEOC charge. The parties concede that this performance evaluation was based on radiologist complaints. Householder again argues that such complaints were invalid and without any basis. Thus, she argues, her performance evaluation, which reflected those complaints was retaliatory. This argument and the evidence of record, however, fail to establish any causal link.

Here, the temporal proximity, nearly six months is not unduly suggestive and does not sufficiently establish any causal link. See Thomas v. Town of Hammonton, 351 F.3d 108, 114 (3d Cir. 2003). Further, as with the post-EEOC charge QA forms discussed above, plaintiff has failed to set forth any evidence of any inconsistent statements of ACMH regarding the performance evaluation or any other evidence from the record as a whole that is sufficient to establish this necessary causal link. Where, as here, the temporal proximity is not so close as to be unduly suggestive, and there is no other evidence of record to draw an inference of a causal connection, plaintiff's retaliation claim fails. To the extent plaintiff's retaliation claim is predicated on what she asserts are unjustified negative evaluations or

13

criticism, no reasonable jury could find the necessary causal link between the EEOC charge and this performance evaluation for plaintiff to succeed on her retaliation claim.

Third, with respect to her suspension without pay, Householder does not dispute that she accessed patient files. Rather, she contends that she accessed non-confidential information and was unjustly punished for breaching ACMH's confidentiality policy. Quite simply, this is a distinction without a difference. There is no evidence of any exception to the policy for accessing non-confidential information. The policy prohibits unauthorized access of any sort. It is undisputed that five other ACMH employees who violated the policy were also disciplined. There is simply no evidence to support plaintiff's theory that she did not violate the policy or to the extent that she did, she was wrongfully punished. Moreover, even if Householder could establish a prima facie case of retaliation based on her suspension, she has failed to present evidence sufficient to raise a genuine issue of material fact that ACMH's legitimate, non-discriminatory reason for the suspension, i.e., violating its policy of accessing patient files, was a pretext for retaliation.

Finally, Householder's subjective belief or theory that ACMH is somehow trying to force her to quit amounts to nothing more than unsupported allegations and suspicions, which are insufficient

14

at the summary judgment stage. <u>Jones</u>, 214 F.3d at 407. Thus, it is appropriate to enter summary judgment in defendant's favor on plaintiff's retaliation claim.[4]

IV. <u>CONCLUSION</u>

For the foregoing reasons, we conclude that no reasonable juror could find in favor of Householder on any of her claims. As such, we will enter judgement in ACMH's favor on all counts.

An appropriate order follows.

---

[4] Although it appears that plaintiff has withdrawn the portion of her retaliation claim based on harassment, we find any such claims would also fail as a matter of law. To the extent plaintiff attempted to assert a hostile work environment claim, there is no evidence that would link any of the alleged harassing conduct to her age. Further, there is no evidence that any alleged conduct was pervasive and regular or that the alleged discriminatory conduct would adversely affect a reasonable person of the same protected status.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LINDA HOUSEHOLDER, )
 )
        Plaintiff, )
 )
v. ) Civil Action No. 07-0372
 )
ARMSTRONG COUNTY MEMORIAL HOSPITAL, )
 )
        Defendant. )
 )

## ORDER

AND NOW, this 5th day of August, 2008, upon consideration of defendant's motion for summary judgment [Doc. No. 23], IT IS HEREBY ORDERED that the motion is GRANTED. The Clerk of Court is directed to mark this case closed.

BY THE COURT:

/s/ Lancaster, J.

cc: All Counsel of Record